Andrew Frisch. Some cases test the limits of permissible discretion. There's nothing about my client, Andrew Zayac, nothing about any distinction between Mr. Zayac and Mr. Yes, one part of the statute talks about disparities among defendants found guilty of similar conduct. But the same statute, the subsequent subsection, commands consideration of unusual, unforeseen mitigating circumstances as here, where the government acknowledges at least equal culpability. It's in their brief. Gonzalez could not realistically have been convicted of his crimes without complicity in Zayac's crimes. Concealment of the victim's body, for example. Concealment of the victim's marijuana. I'm sorry, can you clarify, are you making a disparity argument that is separate and apart from the 3553A factor about sentencing disparities? I think the disparity, I think the disparity plays a role in both. It helps establish exceptional. Okay, so can you, can you articulate or elaborate upon the argument that is separate and apart from the 3553A factor? Well, disparity, as has been recognized by judges around the country, can be an exceptional and compelling circumstance to consider under the First Step Act. I think it's page 33 of my brief, for I cite five or so cases where courts cite disparity in various contexts as one of the things they consider in establishing extraordinary and compelling circumstances. It's the government's evidence that Mr. Zayac, this is the government's evidence at trial, that Mr. Zayac told his girlfriend that he was borrowing her Jeep Cherokee for an hour. And yet he returned the next morning and failed in the intervening six or seven hours to return 41 of her calls, all of which went to voicemail. And the empty holster was found in Mr. Gonzales' possession. Now, none of that has, absolves Mr. Zayac of his liability for the crimes of which he was convicted. But something happened that he did not expect. And the person and the government's evidence, Gonzales was in the passenger seat. The bullet went from the passenger seat to the back. He had an empty holster in his possession, though Judge Hall did not allow that at trial. But those are all factual questions, right? And we are obligated to give the district court a wide degree of discretion in assessing how those factor, right? Wide is not limitless. Wide is not limitless. OK, no, I hear you. I hear you. But what I'm asking is, can you articulate, I mean, because we're going to have to write something that exists on a piece of paper that is going to give guidance to district courts, that's going to give guidance to petitioners and going to give guidance to the bar. What is the words that you believe we need to employ to set a standard that you think is consistent with our case law and would help your client? So first of all, I understand the court's question. Every case turns on its own facts. I understand the court's concern about writing something. But what I would say in this case, I mean, the most the court is going to do, and I hope the court does it, is remand this case for reconsideration. There are ways in which Judge Hall abused her very wide discretion, one of which is to rely, as I said before, on the statute's subsection about considering people found guilty of similar conduct and ignoring and not discussing at all the very next subsection of 3553 about considering unusual or mitigating or unforeseen circumstances, what we used to call about, you know, a non-heartland issue. She looked at one part of the section, not the other. That's an abuse of discretion. This is 125 courses. This is the challenge program. This is a leader. And on this point, and I mean no disrespect to the government, I truly don't, but I would ask that you be skeptical of some of their rhetoric. For example, they say in their brief, Mr. Zayach is delusional. He's taking the position they're taking, that the two people are at worst equally culpable, but more, and this should have annoyed Judge Hall. Maybe it did, and she didn't write about it. But the government in its papers below disparages the fellow inmates who express such heartfelt sentiment in Mr. Zayach's favor, putting in quotes Reverend Cooper, his name, a minister, and a senior guide in this challenge program and the prisoner. Where's the case law that says that discounting a character supporter is an abuse of discretion? The abuse of discretion is not discounting the character. The abuse of discretion is even discussing these disciplinary tickets just because they exist. As it is, the tickets are temporally and qualitatively irrelevant, given all the circumstances, but more— I'm sorry, why are they irrelevant? I'm sorry, I didn't understand. Why are they irrelevant? First of all, they're temporally remote. Irrelevant may have been an overreach, but they're largely irrelevant. I'll use largely irrelevant. But then that becomes a weighing issue, right? If they're not legally irrelevant, which we agree that they're not, then it becomes a weighing issue, isn't that right? If I can speak to that, because what's an abuse of discretion is not the weighing, it's looking at these six tickets in prison where strange things happen, ignoring Mr. Zayach's sworn declaration. All the government does is cite the tickets with nothing more. What's an abuse of discretion is not to conduct some kind of inquiry, better to understand it. And all of this arises in the context of wild, of this wild, disparate results between the man, Gonzalez, who appears to have been the shooter, and Mr. Zayach, who was driving the jeep. What is your best case decision out of this court to support your position in this field? I think that's a fair question. I don't have one decision in mind of this court. I recognize the court is generally reluctant to reverse judges who deny compassionate release motions. I get that. Yes, I should know this, but have we done so in any recent years in Fed Third type land? I should know the answer to Your Honor's question. I don't for certain. I can't say for certain. Plainly, it's rare. But there are some cases where the underlying circumstances are so compelling that it cries out for the court to do something about it. I'm trying to find out if we've ever, whether we're going to be the first panel ever to, or in recent times, to do that. Well, this case is so much worse that it's the only case in which we've ever done that. I should know the answer to Your Honor's question. I apologize that I don't. But if the court has not done it before, it's time that it be done. Because the facts here are so compelling that my client, finish the sentence if I could and see if my time is up, that my client is sitting in jail for the rest of his life. And the guy who it appears had the gun, shot the guy, served six years, and the government doesn't disagree. They don't know what happened in the car. The best the government can do is say, we don't know. They appear equally culpable. Before you sit down, are you abandoning the COVID argument as one of your reasons? No, I'm not abandoning it, but I've been, I'm not abandoning it at all. I've just been arguing these motions and arguing COVID. You're relying mainly on the rehabilitation efforts and the sentencing. I'm not abandoning COVID. I have just found that because COVID has been solved to some extent with vaccinations, that as a matter of argument, judges are aware of it. But it doesn't seem to be tipping the scales in any particular case. But I stand by it as part of my presentation. Okay. Thank you so much. Mr. Darrington, could you focus on the disparity with Mr. Gonzales? Or at least begin with the disparity with Mr. Gonzales? Yes. Thank you very much, Your Honor. May it please the Court, I'm AUSA Robert Darrington on behalf of the government. For the reasons set forth in the government's brief, this Court should affirm the district court's denial of Zayach's motion for compassionate release. And beginning with Your Honor's question regarding the sentencing disparity, the district court carefully considered and rejected that argument. And as the district court pointed out, Mr. Zayach's argument entirely overlooked the fact that he was convicted of different crimes than his co-defendant, Mr. Gonzales. Mr. Zayach was convicted of felony murder, kidnapping resulting in death, and other charges, while his co-defendant, Mr. Gonzales, was convicted of possession with intent to distribute marijuana and charges related to the destruction of evidence. If the Court followed Mr. Zayach's argument, it would yield unusual results, such as in this case, where multiple defendants commit a crime, one defendant is acquitted of the most serious charges, while the other defendant is convicted of the most serious charges. Under Mr. Zayach's reasoning, the convicted defendant would never receive a sentence longer than the acquitted defendant's sentence, and that would just be a bizarre result. In most of the cases, I think you'll agree that were cited by your colleague on the other side involved disparities when it was conviction for the same crime. And that, I think, is what you're saying is an important distinction, because these were different crimes, the sentencing disparity doesn't trigger the same sort of concern. That's correct, Your Honor. And what do you think is the best case that we have for that proposition? I don't have a case on the top of my mind. I would be happy to follow up with a letter from the Court and provide that following argument. I didn't find one either, so it may not exist. I was just asking about it. But you think that that's an important and legally significant distinction between the cases that do encourage a reviewing court like ours to look at the disparities? I believe it is important, the fact that Mr. Zayach was convicted of these crimes, whereas his co-defendant was not. There's also the other point, Your Honor, that the district court made, is that under Mr. Zayach's argument, there would also be unwarranted sentencing disparities between Mr. Zayach and defendants in other cases who were convicted of the same charges and under similar circumstances. And that's another point that the district court made. With regards to Mr. Zayach's argument regarding rehabilitation, the government acknowledges and commends Mr. Zayach for his efforts in taking BOP's rehabilitation programs and courses. But as was pointed out today, Mr. Zayach does have a number of disciplinary tickets. Okay, but the record he puts forth for the rehabilitation is quite strong. Is that correct? At least stronger. I haven't been on the bench that long, but it's stronger than some of the others that I've seen. And the infractions seem relatively minor. How do we weigh that? I would certainly agree that he has taken a number of courses, a number of programs through BOP. However, I would submit respectfully to the court that at least two of those disciplinary tickets were related to drugs and weren't significant disciplinary tickets. And as counsel pointed out, I believe he did, Mr. Zayach had the opportunity to address those two disciplinary tickets with the district court. In fact, Mr. Zayach submitted a declaration to the district court explaining the circumstances and the context for each of his six disciplinary tickets. The court had the benefit of reviewing that and clearly was not persuaded by Mr. Zayach's explanations when it found that his progress he's made in BOP simply wasn't enough to demonstrate extraordinary and compelling circumstances. What about his release plan? How do we weigh that? That seemed stronger than most that I've seen. I would acknowledge that Mr. Zayach's release plan certainly proposes a reliable release plan. However, I believe, as the district court pointed out, the fact that his BOP record in and of itself does not demonstrate extraordinary and compelling circumstances. But even if the court found and was persuaded that Mr. Zayach did put forth a very reliable and strong release plan, there's still an alternative basis for affirming the district court's decision, and that's found in the 3553A factors. In this case, Mr. Zayach committed a horrific crime. The district court here sat through both Mr. Zayach's trial and the trial of his co-defendant as well as both sentencings. The evidence at Mr. Zayach's trial showed that Mr. Zayach cultivated a relationship with the victim over several months in which he purchased small amounts of marijuana from the victim. Mr. Zayach enticed the victim with an offer to purchase large amounts of marijuana at a price over market value. Mr. Zayach and his co-defendant drove to the victim's house where the victim packed duffel bags of marijuana into their car. The victim got in their car, was robbed, kidnapped, and shot two times at close range. Afterward, Mr. Zayach and his co-defendant drove to Danbury where they disposed of the victim's body in a nearby reservoir. After that, they returned to New York where the car was burned. These were horrific crimes as the court pointed out. And Mr. Zayach, and I will point out that at Mr. Zayach's sentencing, the court noted that it fully supported the jury's verdict. And in the court's view, this was the most serious crime that a person could commit. The court also went on to note that it had no discretion in sentencing Mr. Zayach, but it was not necessarily lamenting or regretting that. Well, I guess what I'm asking was the district court did not seem to discuss, or at least I didn't seem to see much of a discussion of the actual content of the infractions. Was that error? No, Your Honor. Why? It was not error. I should point out that there's no dispute that Mr. Zayach received those six disciplinary reports. I don't believe that that's in dispute here. The issue that Mr. Zayach is presenting is that he wanted to provide some sort of context or explanation for those, which he certainly did in his declaration submitted to the district courts. The district court does not go on to discuss these tickets in much detail. However, it's implicit in the decision that the court wasn't persuaded by his explanations. What would you say if your colleague suggested that the court completed 3582 with the statutory factors under 3553, the extraordinary and compelling reasons? I'm sorry, Your Honor. I think Brooker authorizes district court judges to consider any extraordinary and compelling reason, right? You'd agree with that? Yes, Your Honor. So was the district court completing the extraordinary and compelling reasons standard under 3582 with the statutory factors under 3553? I don't believe so, Your Honor. I think the court recognized that in its decision. But I believe the way that I read the decision is that the important thing is that Mr. Zayach was convicted beyond reasonable doubt by a jury. He's certainly more culpable, at least in the jury's mind and the court's mind, than Mr. Gonzalez. And I believe that was considered by the court. I know that Mr. Gonzalez is sentencing. Certainly the jury didn't come back with a verdict on all the severe charges for Mr. Gonzalez. But I believe the court also noted that it wasn't convinced either. So I think that was something that the court may have had in mind in issuing this decision. Although it's not explicit in the decision. Unless the court has any further questions, the government press conference is brief. Okay. Thank you. Thank you. A few points, a few quick points in rebuttal. To some extent, my colleague proved my point because he discussed the narrative of the underlying crime, making reference to Mr. Zayach and Mr. Gonzalez. They did this together. This is not abstract as to looking at all people convicted who are found guilty of a particular crime nationwide. Was this appealed in the first place? It was. And the court sustained the conviction. So aren't you asking us to look at that underlying all of this? Well, I think the facts are relevant. No, I think the facts are relevant to show the disparity and to show the government's acknowledgement of what the roles of these people were. As I said before, the fact that there are facts that point to something unexpected happening doesn't mean that the panel who heard the direct appeal got it wrong. It just means he's guilty. But now there are compelling and extraordinary circumstances that show a disparity between two identically charged people in the same case. Wasn't that disparity, whatever the disparity was, wasn't that disparity in existence at the time the case came here first? I'm not sure it was because I think – I'd have to go back and look. Your Honor is asking me good questions, and I wish I had the answers. Gonzales served 72 months, 6 years, and I don't recall whether he had been released at the time. In any event, disparity was not raised as an argument. And one other thing, I think – I think I'm right about this. Zayack's conviction was affirmed pre-Brooker. So it was a statutory mandatory minimum at the time, but it's not now. So I don't know that this court – or I don't think it was – It was life when Zayack was convicted. So even if – and I'm sure the first panel heard this pre-Brooker. The court had no discretion. But now that we know Gonzales is out, served 6 years, Zayack is serving the rest of his life in prison, the court can correct for it. And I wanted – I'm sorry. I see that my – the red light's on. If I could make one – You can – it's our time, not yours. So if my colleague has a question, you should answer it. I appreciate that, Judge. I understand the court's concern about whether or not this has been done before. That is – and the court under no circumstance is simply going to order Mr. Zayack released. You're simply going to remand it for consideration of, for example, the other subsection of the statute or the disciplinary tickets or some of the government's evidence that shows his lesser complicity. But I think it is important for district judges within the circuit to know that discretion in this area, which is fairly new, Brooker was 2020 or 2021, will be looked at by the circuit court and requires more than what happened here. I want to make one last point, if I can, and I'll be quick, and I don't mean to say something that's self-evident. There's a lodestar that should be higher in the sky than finding a permissible range of discretion in which to put a judge's ruling. It's public confidence in the courts. It's public confidence in what we do here. And if you step back from the lawyering that we do and look at this from a person-in-the-street standpoint, you have two guys in a car. One guy has an empty holster. The bullet comes from where he was sitting. He appears to be the shooter. He gets the guy in the passenger, the guy who's driving. He's driving his girlfriend's car. He says, I'll be back in an hour. And 41 calls go to voicemail where he's delayed six or seven hours. So the person on the street, this disparity makes no sense. Well, there's also a disparity that one was convicted of murder and one was not. That's true. But under the circumstances of this case, looking at that second subsection, this is unusual. And Gonzalez could not have acted without complicity in Zayac's crimes. For example, disposing of the victim's body, possession of the marijuana. Okay, thank you. We'll take it under advisement. Your Honors, thank you.